**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

SANDRA CERNY-DEAHL,

           Plaintiff,

vs.

KEVIN LAUNDERVILLE and CITY
OF HUDSON, IOWA,

           Defendants.

No. 14-CV-2010-LRR

**ORDER**

*TABLE OF CONTENTS*

I.    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.  *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

IV.  *SUMMARY JUDGMENT STANDARD.* . . . . . . . . . . . . . . . . . . . . . . . . **3**

V.    *RESISTANCE MATERIALS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

VI.  *RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . **4**

    *A.*    *Parties.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *B.*    *Overview of the Dispute.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

VII.  *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

    *A.*    *Due Process—Property Interest.* . . . . . . . . . . . . . . . . . . . . . . **9**
    *B.*    *Due Process—Liberty Interest.* . . . . . . . . . . . . . . . . . . . . . . . **10**
    *C.*    *Libel and Slander.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
        *1.*    *Truth.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
        *2.*    *Opinion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
        *3.*    *Qualified privilege.* . . . . . . . . . . . . . . . . . . . . . . . **19**
    *D.*    *Punitive Damages.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

VIII. *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

# I. INTRODUCTION

The matter before the court is Defendants Kevin Launderville and City of Hudson, Iowa's ("the City") (collectively, "Defendants") "Motion for Summary Judgment" ("Motion") (docket no. 22).

# II. PROCEDURAL HISTORY

On February 17, 2014, Plaintiff Sandra Cerny-Deahl filed a Petition in the Iowa District Court for Black Hawk County (docket no. 3), alleging violations of her state and federal constitutional rights, libel and slander. On February 26, 2014, Defendants removed the case to this court. *See* Notice of Removal (docket no. 2). On March 21, 2014, Defendants filed an Answer (docket no. 5). On July 22, 2014, Cerny-Deahl filed an Amended Complaint ("Complaint") (docket no. 8-1). In the Complaint, Cerny-Deahl alleges violations of due process based on property interest (Count I) against the City, based on liberty interest (Count II) against Defendants and also alleges libel and slander (Count III) against Launderville. On November 7, 2014, Defendants filed an Amended Answer (docket 12). On April 16, 2015, Defendants filed the Motion. On May 11, 2015, Cerny-Deahl filed a Resistance (docket no. 25). On May 21, 2015, Defendants filed a Reply (docket no. 21). The Motion is fully submitted and ready for decision.

# III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over the claims asserted in Counts I and II. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court also has supplemental jurisdiction over the claims asserted in Count III. *See* 28 U.S.C. § 1367 ("Except as [otherwise] provided . . . , in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

"To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most favorable to the non-moving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). The non-moving party "has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *B.M.* ex rel. *Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013)) (internal quotation marks omitted). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case

. . . necessarily renders all other facts immaterial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)) (alteration in original).

## V. *RESISTANCE MATERIALS*

Defendants argue that the materials Cerny-Deahl filed in support of the Resistance violate the court's Local Rules and are therefore improper. Specifically, Defendants argue that Cerny-Deahl violated the court's local rules on summary judgment when responding to Defendant's Statement of Material Facts (docket no. 22-2).

First, the court finds that Cerny-Deahl violated Local Rule 56.b.2 by failing to submit "[a] response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact, filed as an electronic attachment to the brief under the same docket entry." L.R. 56.b.2. "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." L.R. 56.b. Accordingly, the court shall deem Defendants' Statement of Material Facts admitted in considering this Motion.

Furthermore, the court finds that Cerny-Deahl violated Local Rule 56.b by submitting a statement of additional material facts that is not numbered separately. *See* L.R. 56.b ("Each individual statement of additional material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix containing that part of the record."). Nevertheless, the court will consider Cerny-Deahl's Statement of Material Facts despite her failure to comply with the Local Rules.

## VI. *RELEVANT FACTUAL BACKGROUND*

Viewing the evidence in the light most favorable to Cerny-Deahl and affording her all reasonable inferences, the uncontested material facts are as follows.

## A. Parties

Cerny-Deahl is a resident of Iowa. She was employed as the city clerk for the City of Hudson, Iowa during the relevant time period until April 22, 2013. Launderville was the mayor of the City during the relevant time period and is a resident of Iowa. The City is a municipal corporation of the state of Iowa and is located in Black Hawk County. Cerny-Deahl alleges that Launderville and the City were acting under color of state law at all times relevant to the instant action.

## B. Overview of the Dispute

On January 14, 2013, the city council voted on whether to reappoint Cerny-Deahl as the city clerk for the City. The vote failed without any formal discussion and Cerny-Deahl was not reappointed. However, Cerny-Deahl continued to work for the City as a "holdover clerk." On February 25, 2013, the city council passed Resolution No. 1588, which approved the job description for the position of city clerk and identified a salary range of $35,000 to $55,000.[1] The Resolution stated, in part:

> This job description and salary range are identified to correlate to the hiring of a City Clerk for the 2013 term. It is clarified that the actual salary for the Clerk for the 2013 term, when appointed, would have to be approved at the time of the appointment. This resolution would not affect the 2012 term and holdover.

Defendant's Appendix ("App'x") (docket no. 22-3) at 24. Also on February 25, 2013, the city council reappointed Cerny-Deahl as the city clerk following discussion by city council members. The resolution passed by the city council states:

> NOW, THEREFORE, BE IT HEREBY RESOLVED, that the Hudson City Council approve Sandie Deahl to be re-appointed as City Clerk.

_____

[1] Prior to Resolution No. 1588, Cerny-Deahl was making $59,000 as the city clerk. Complaint ¶ 9.

> BE IT FURTHER RESOLVED, that the Mayor of the City of
> Hudson is authorized and directed to execute the documents
> required to effectuate this Resolution.

Resolution No.1589, Defendant's App'x at 13.  Following the February 25, 2013 city council meeting, Cerny-Deahl prepared a resolution for Launderville to sign.  The resolution states:

> NOW, THEREFORE, BE IT HEREBY RESOLVED, that the
> Hudson City Council approve Sandie Deahl to be re-appointed
> as City Clerk.  Per Mayor Launderville: Effective July 1, 2013
> wage reduction to $55,000 exempt salary as identified with
> fiscal year 2013 budget.
>
> BE IT FURTHER RESOLVED, that the Mayor of the City of
> Hudson is authorized and directed to execute the documents
> required to effectuate this Resolution.

Resolution No.1589, Defendant's App'x at 13.

The dispute in this case arose over the difference between the resolution passed at the city council meeting and the resolution prepared by Cerny-Deahl and signed by Launderville.  Following her re-appointment, Cerny-Deahl continued to receive a salary of $59,000, pursuant to the resolution prepared by Cerny-Deahl and signed by Launderville.  On March 26, 2013, Cerny-Deahl sent an e-mail to Launderville to confirm that the City Clerk salary change would become effective on July 1, 2013.  Following this e-mail, Launderville called the attorney for the City.  Launderville stated that he did not read the resolution that Cerny-Deahl prepared before signing it and, therefore, did not realize the language in the resolution he signed differed from the language passed at the February 25, 2013 city council meeting.  The city council held a special council meeting on April 11, 2013 after learning that Cerny-Deahl was still receiving a salary of $59,000.  At the April 11, 2013 meeting, the city council discussed Cerny-Deahl's salary change,

the date it was (or was not) to become effective, and the possibility of termination. At that meeting, Launderville stated:

> When I signed that, there has to be a trust factor, and when I signed it I did not read through it because I assumed it was the one that was in the packet that, for that council meeting, which it did not have a July 1 date in it. So, after I was made aware of it, that's what it stated, then I got a hold of [the city attorney]. Because I didn't feel that it exactly, what I read in the minutes is not what it said. . . .
>
> I just have a trust issue here. I will be the first to admit that I am a part-time mayor, and I come in and I sign a lot of papers and I have to trust that person that they're going to put on there what I think was on there and if there's a change that they need to talk to me about it prior. I could make this a full-time job, and probably work 50 hours a week if I sat and read everything, but I don't think that a $6,000 a year salary that's going to work. So, I have a trust issue right now and a lack of confidence. I feel a little betrayed to be honest with you. I feel like I'm the victim here. Uh, so, that's, that's, uh, not a good working relationship. It's difficult. It's very difficult for me. Um, so that's kind of where I'm at. The reason this got put on is because if she did not accept this, this appointment at the new salary I felt that we should then take the next move, which would have been to terminate right away. Just so you know what's on the agenda. It's a three step process basically. So. But trust is really important.

April 11, 2013 City Council Meeting Video, Defendant's App'x at 48. The city council then referred the matter to its personnel committee. On April 15, 2013, the personnel committee met and decided to recommend to the city council that Cerny-Deahl be terminated. The city council voted to remove Cerny-Deahl from her position on April 22, 2013. Pursuant to Iowa law, Cerny-Deahl was provided with written notice of the decision and an opportunity to request a hearing. The removal decision is contained in Resolution No. 1606 and an attached written order. *See* Resolution No. 1606, Defendants' App'x at

36-38. Following her removal, Cerny-Deahl requested a hearing pursuant to Iowa Code § 372.15. The hearing was held on July 12, 2013. At the hearing, counsel for Cerny-Deahl and Doug Coonrad, Cerny-Deahl's attorney during the salary change discussions, spoke on behalf of Cerny-Deahl. At the hearing, the city council approved Resolution No. 1665, confirming the removal of Cerny-Deahl from the position of city clerk.

## VII. ANALYSIS

Cerny-Deahl alleges that the City violated her federal and state constitutional rights by depriving her of property without due process of law and that Defendants violated her federal and state constitutional rights by violating her liberty interest in her good name.[2] She also alleges a libel and slander claim. Defendants argue that all claims should be dismissed. Defendants also argue that the court should dismiss the punitive damages claim.

"Section 1983 creates a cause of action against 'every person, who under color of any statute, ordinance, regulation, custom, or usage' subjects any person to deprivation of immunities secured by the Constitution or federal laws." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (quoting 42 U.S.C. § 1983). "To state a claim under [§] 1983, a plaintiff must set forth facts that allege an action performed under color of state law that resulted in a constitutional injury." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). "[T]he essential elements of § 1983

---

[2] Article I, § 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. This provision "mirrors the provisions of [the Fifth and Fourteenth Amendment to the] United States Constitution. Accordingly, [the Iowa Supreme Court] interpret[s] both the Iowa and federal Due Process Clauses in the same fashion, including approaching due process questions under a rubric differentiating between 'procedural' and 'substantive' due process." *Master Builders of Iowa, Inc. v. Polk Cnty.*, 653 N.W.2d 382, 397 (Iowa 2002). Thus, the court's analysis, while applying federal law, applies equally to Cerny-Deahl's state constitutional claims.

liability [are] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001).

### A. Due Process—Property Interest

Defendants argue that the court should grant the Motion because Cerny-Deahl "did not have a property interest in her continued employment" and "because there was no municipal policy or custom that caused a constitutional tort." Motion at 1. Cerny-Deahl argues that her due process rights were violated because she did have a property interest in her continued employment and the city council's hearing was unfair.

"In analyzing a claim that the deprivation of property violates either procedural or substantive due process rights, a court must first consider whether the claimant has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Ellis v. City of Yankton, S.D.*, 69 F.3d 915, 917 (8th Cir. 1995). "Protected property interests are created by state law, but federal law determines whether the interest rises to the level of a constitutionally-protected property interest." *Id.* "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules of understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (U.S. 1972)). "An employee must show a property interest in continued employment to assert a § 1983 claim for violation of constitutional due process." *Couch v. Wilkinson*, 939 F.2d 673, 674 (8th Cir. 1991).

Cerny-Deahl alleges that she has a property interest in continued employment pursuant to Iowa Code § 372.15, which states:

> Except as otherwise provided by state or city law, all persons appointed to city office may be removed by the officer or body making the appointment, but every such removal shall be by written order. The order shall give the reasons, be filed in the

office of the city clerk, and a copy shall be sent by certified mail to the person removed who, upon request filed with the clerk within thirty days of the date of mailing the copy, shall be granted a public hearing before the council on all issues connected with the removal. The hearing shall be held within thirty days of the date the request is filed, unless the person removed requests a later date.

Iowa Code § 372.15. The Iowa Supreme Court stated that Iowa Code § 372.15 does not grant employees "a property interest in continued employment under state law." *Bennett v. City of Redfield*, 446 N.W.2d 467, 472 (Iowa 1989). Cerny-Deahl argues that *Bennett* does not address her right to a fair post-termination hearing. However, the first step in a procedural due process challenge based on a property interest is to establish whether a property interest exists. *See Ellis*, 69 F.3d at 917. Here, Cerny-Deahl has not demonstrated the existence of a constitutionally protected property interest because she has no property interest in continued employment. Therefore, her claim necessarily fails as a matter of law.[3] Accordingly, the court shall grant the Motion with respect to Count I, violation of due process based on a property interest.

### B. Due Process—Liberty Interest

Defendants argue that the court should dismiss Cerny-Deahl's due process claim based on deprivation of a liberty interest for the following reasons: (1) Cerny-Deahl was

---

[3] Defendants also argue that the court should grant the Motion "because there was no municipal policy or custom that caused a constitutional tort." Motion at 1. "For there to be section 1983 liability, 'there must first be a violation of the plaintiff's constitutional rights.'" *Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). Here, Cerny-Deahl failed to demonstrate a constitutional violation. Therefore, the court need not examine the issue of the City's liability based on a municipal policy or custom. *See McDonald v. City of Saint Paul*, 679 F.3d 698,704 (8th Cir. 2012) (stating that the possession of a "property interest is a condition precedent to the government's obligation to provide due process of law, and where no such interest exists, there can be no due process violation").

provided with a name-clearing hearing; (2) "there was no municipal policy or custom that caused a constitutional tort"; and (3) Cerny-Deahl sued Launderville only in his official capacity and he is entitled to qualified immunity. Motion at 1-2. Cerny-Deahl argues that because her liberty interest was implicated by Defendants' conduct, the court should deny the Motion. Brief in Support of the Resistance (docket no. 25-1) at 11.

"An at-will public employee generally does not have a protected liberty interest in continued employment which would obligate a government employer to provide a hearing in connection with the employee's discharge." *Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 839 (8th Cir. 2003).

> [A] government employee is entitled to procedural due process . . . when [she] has been deprived of a constitutionally protected . . . liberty interest. An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges.

*Winskowski v. City of Stephen*, 442 F.3d 1107, 1109-10 (8th Cir. 2006) (quoting *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 900 (8th Cir. 1994)) (second and fourth alterations in original) (quotation marks omitted). "Where a government employee has been sufficiently stigmatized, the employee's procedural due process rights are vindicated by a 'name-clearing hearing at a meaningful time' during which the employee can respond to the employer's accusations." *Id.* at 1110 (quoting *Schleck v. Ramsey Cnty.*, 939 F.2d 638, 642 (8th Cir. 1991)). A government employee's liberty interest is implicated "when he or she is fired based on allegations of dishonesty, immorality, or illegality." *Hammer*, 318 F.3d at 839.

> To establish the deprivation of a liberty interest, a public employee must make a three-part showing: (1) that the public employer's reasons for the discharge stigmatized the employee, seriously damaging his or her reputation or by

> foreclosing other employment opportunities; (2) that the
> employer made the reasons for the discharge public; and (3)
> that the employee denied the charges that led to the discharge.
> Where this showing has been made, under the Constitution's
> procedural due process protections, the employee must be
> provided with adequate notice and an opportunity to dispute
> the charges in a "name-clearing" hearing.

*Id.* at 839-40 (internal citations omitted). A proper name-clearing hearing requires only "that the aggrieved party be offered a chance to refute the charges against him or her." *Id.* at 840; *see also Codd v. Velger*, 429 U.S. 624, 627 (1977) (stating that the sole purpose of a "hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name'").

For the purposes of the Motion, the court will assume that Cerny-Deahl's liberty interest was implicated. That is, that Defendants' reasons for discharge stigmatized her publicly and she denies such reasons. Cerny-Deahl argues that the court should deny the Motion with respect to Count II because "[a] genuine issue of material fact exists as to the fairness of the post-termination hearing." Brief in Support of the Resistance at 9. Cerny-Deahl argues that "there was a predisposition by the City Council to remove [Cerny-Deahl] prior to her post-termination hearing such that the City Council could not conduct a fair hearing" and that the hearing itself was unfair because Cerny-Deahl "was denied the opportunity to question Launderville." *Id.* Defendants argue that the purpose of the "hearing is to provide the person the opportunity to clear her name, and all that is required is that the aggrieved party be offered a chance to refute the charges against her." Reply at 4.

The court agrees with Defendants. Cerny-Deahl was provided with a hearing and her attorney presented evidence on her behalf. While it is true that Launderville did not submit to questioning by Cerny-Deahl's counsel, such cross-examination is not required

for a name-clearing hearing to pass constitutional muster. *See Hammer*, 318 F.3d at 841 (finding a name-clearing hearing was sufficient when the plaintiff "was given unrestricted time to speak at the hearing, and his attorney was also allowed to speak on his behalf"). Therefore, as a matter of law, Cerny-Deahl cannot demonstrate a violation of her liberty interest. Accordingly, the court shall grant the Motion with respect to Count II.

### C. Libel and Slander

"The law of defamation is composed of the twin torts of libel and slander." *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). "The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation and good name." *Id.* (quoting *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994)) (internal quotation marks omitted). "Libel involves written statements, while slander involves oral statements." *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) (citation omitted). Cerny-Deahl has alleged both libel and slander in the Complaint.

Under Iowa law, "[t]he law of defamation embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks. An action for defamation or slander is based upon a violation of this right." *Id.* at 174 (quoting *Schlegel v. Ottumwa Courier*, 484 N.W.2d 217, 221 (Iowa 1998)). "To establish a prima facie case of [defamation], the plaintiff must show the defendant: '(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Id.* at 175 (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)); *see also Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). Libel is defined as "'malicious publication, expressed either in printing or in writing, . . . tending to injure the reputation of another person or to expose [the person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [the person's] business.'" *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115 (Iowa 1984) (alterations in original) (quoting *Plendl v. Beuttler*, 111 N.W.2d 669, 670-71 (Iowa

1961)). "Slander generally consists of the oral publication of defamatory matter." *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994).

Cerny-Deahl alleges that the statements made by Defendants falsely accuse Cerny-Deahl "of acting dishonestly for her own financial benefit." Complaint at 7. The statement at issue in the libel claim appears to be the written order accompanying Resolution No. 1606, removing Cerny-Deahl from her position as city clerk. *See* Defendants' App'x at 37-38. The written order states, in relevant part:

> The duly elected and acting City Council of Hudson, Iowa, pursuant to Hudson City Ordinance 1.1-0210 and Section 372.15, Code of Iowa, does hereby order the removal of Ms. Sandie Deahl as City Clerk of the City of Hudson, Iowa. The Council hereby notifies Ms. Sandie Deahl that her removal from the office of the City Clerk of the City of Hudson, Iowa is being made for the following reasons:
>
> **A.** **Prepared Inaccurate Resolution Resulting in Her Financial Benefit.** Sandie Deahl prepared and presented to the Mayor a Resolution #1589 which contained language neither discussed nor approved by the City Council and which, if not corrected, would have resulted in her financial benefit to the financial detriment to the City of Hudson, Iowa,
>
> **B.** **Loss of Trust and Confidence:** Mayor Launderville and the City Council of the City of Hudson, Iowa no longer have trust and confidence in Sandie Deahl as City Clerk to execute the Council's decisions and to properly administer the affairs of the City.
>
> . . . .
>
> **Actions Inconsistent with Duties as Chief Financial Officer:** As City Clerk, Sandie Deahl is the chief financial officer of the City of Hudson, Iowa and the Mayor, Council and residents of the City of Hudson, Iowa must have every confidence that she will properly administer the funds of the

City as directed by the City Council, and the preparation and presentation of Resolution #1589 in which she included language for her financial benefit has resulted in a lack of such confidence by the City Council.

**Prepared and Maintained Inaccurate City Records:** As City Clerk, Sandie Deahl is responsible for maintaining a record of city business which accurately reflects the actions of the City Council of the City of Hudson, Iowa and the preparation and presentation of Resolution #1589 resulted in making a part of the city records and resolution which did not accurately reflect the actions of the City Council of the City of Hudson, Iowa.

Written Order, Defendants' App'x at 37-38.

Cerny-Deahl alleges that the following statements constituted slander: Launderville's statement that Cerny-Deahl intentionally misled him into signing Resolution No. 1589, that she "prepared an inaccurate resolution resulting in her financial benefit" and had therefore lost the "'trust and confidence' of the mayor and the city council." Complaint ¶ 14. Cerny-Deahl alleges that based upon Launderville's false statements, the City terminated her from her position as city clerk. *Id.* ¶ 15.

Defendants argue that the court should grant the Motion with respect to Cerny-Deahl's libel and slander claims because the statements at issue "were true and/or the opinion of the mayor and city counsel," and the statements are entitled to qualified privilege. Brief in Support of the Motion (docket no. 22-1) at 12-21. Cerny-Deahl argues that the court should deny the Motion because "Defendants cannot establish a lack of genuine issues of material fact as to the truthfulness of the defamatory comments or that the statements were mere opinion" and because "qualified immunity does not exist for statements not made in good faith." Brief in Support of the Resistance at 11-14. The court will address each defense in turn.

### 1.    Truth

Substantial truth is an absolute defense to defamation. *See Lundell Mfg. Co., Inc. v. Am. Broadcasting Cos, Inc.*, 98 F.3d 351, 359 (8th Cir. 1996). To be entitled to the defense of substantial truth, the defendant must establish that the "gist or sting" of the publication in question is substantially true. *Id.* at 359-60 (quoting *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 891 (Iowa 1989) (disapproved of on other grounds by *Schlegel*, 585 N.W.2d 217)) (internal quotation marks omitted). "If the underlying facts as to the gist or sting are undisputed, substantial truth may be determined as a matter of law." *Id.* at 360. "The court determines the gist or sting by look[ing] at the highlight of the [publication], the pertinent angle of it." *Doe v. Hagar*, 765 F.3d 855, 863 (8th Cir. 2014) (quoting *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987)) (internal quotation marks omitted) (alterations in original).

Here, the gist or sting of the statements is that Cerny-Deahl acted improperly and to her own financial benefit, thereby violating the duties of her position as city clerk. When considering the evidence in the light most favorable to Cerny-Deahl, the evidence is sufficient to create a genuine issue of material fact as to whether Defendants' statements are true. Defendants claim that the statements are true, while Cerny-Deahl claims they are not true. The question of substantial truth is a question for the jury. *See Hagar*, 765 F.3d at 863 ("[W]hen the underlying facts as to the gist or sting of the defamatory charge are in dispute, the question of substantial truth is one for the jury." (quoting *Behr*, 414 N.W.2d at 342)). Accordingly, the court shall deny the Motion with respect to the defense of truth.

### 2.    Opinion

"Opinion is absolutely protected under the first amendment." *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 769 (Iowa 2006) (quoting *Jones*, 440 N.W.2d at 891). Under Iowa law, three factors determine whether a statement is fact or opinion: (1) "[t]he

precision and specificity of the statement"; (2) "[t]he verifiability of the statement;" and (3) "[t]he literary context in which the statement was made." *Kiesau*, 686 N.W.2d at 177. "The third factor, literary context, includes the 'social context,' which focuses on the category of the publication, its style and intended audience, and the 'political context' in which the statement was made." *Id.*

> [T]he framework of analysis . . . is whether the alleged defamatory statement can reasonably be interpreted as stating actual facts and whether those facts are capable of being proven true or false. Under this analysis, 'statements of opinion can be actionable if they imply a provable false fact, or rely upon stated facts that are provably false.'

*Yates*, 721 N.W.2d at 771 (quoting *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994)). "The statement that the plaintiff must prove false is not the literal wording of the statement but what a reasonable reader or listener would have understood the author to have said." *Id.* Furthermore, "[b]ecause the degree to which alleged defamatory statements have real factual content can vary greatly, courts should analyze the totality of the circumstances in which such statements are made to decide whether they merit the absolute First Amendment protection enjoyed by opinion." *Craig v. City of Cedar Rapids, Iowa*, 826 N.W.2d 516, 2012 WL 6193862, at *11 (Iowa Ct. App. Dec. 12, 2012) (unpublished table opinion).

Cerny-Deahl states that "Launderville public[]ly stated that [Cerny-Deahl] had intentionally misled him into signing Resolution [No.] 1589 and asserted that she had 'prepared an inaccurate resolution resulting in her financial benefit' and accordingly [Cerny-Deahl] had lost the 'trust and confidence' of the mayor and the city council." Complaint ¶ 14. In the Motion, Defendants argue that the court should find, as a matter of law, that the following statements constitute protected opinion: (1) the written notice of removal contained in Resolution No. 1589 and (2) Launderville's statement at the April 11, 2013 city council meeting. Launderville's statement is as follows:

When I signed [the resolution], there has to be a trust factor, and when I signed it I did not read through it because I assumed it was the one that was in the packet that, for that council meeting, which it did not have a July 1 date in it. So, after I was made aware of it, that's what it stated, then I got a hold of [the city attorney]. Because I didn't feel that it exactly, what I read in the minutes is not what it said. . . . I just have a trust issue here. I will be the first to admit that I am a part-time mayor, and I come in and I sign a lot of papers and I have to trust that person that they're going to put on there what I think was on there and if there's a change that they need to talk to me about it prior. I could make this a full-time job, and probably work 50 hours a week if I sat and read everything, but I don't think that a $6,000 a year salary that's going to work. So, I have a trust issue right now and a lack of confidence. I feel a little betrayed to be honest with you. I feel like I'm the victim here. Uh, so, that's, that's, uh, not a good working relationship. It's difficult. It's very difficult for me. Um, so that's kind of where I'm at. The reason this got put on is because if she did not accept this, this appointment at the new salary I felt that we should then take the next move, which would have been to terminate right away. Just so you know what's on the agenda. It's a three step process basically. So. But trust is really important.

April 11, 2013 City Council Meeting Video, Ex. R. In the Resistance, Cerny-Deahl does not argue that there are any other defamatory statements aside from the statements identified by Defendants. *See* Brief in Support of the Resistance at 11-13.

The court finds that Launderville's statement constitutes protected opinion. His statements that he has a "trust issue" with respect to Cerny-Deahl do not contain actual facts "capable of being proven true or false." *Yates*, 721 N.W.2d at 771. Cerny-Deahl argues only that Launderville's statements "were nowhere near truthful nor were they statements of opinion." Brief in Support of the Resistance at 13. This argument seems to conflate the defense of truth with the defense of opinion. Whether a statement is opinion, however, is a question of law rather than an issue of fact.

However, the court finds that Resolution No. 1589 does not constitute opinion. The statements are precise and specific. They clearly refer to Cerny-Deahl and the actions that she took with respect to her position as city clerk; there is no ambiguity in the meaning of the statement. Furthermore, the statements as a whole are verifiable since they describe the underlying reasons for why the statements are being made  Cerny-Deahl improperly prepared a city council resolution for her own financial benefit. The context for the statements are city council action related to the alleged impropriety. Because the court finds that the defense of opinion does not preclude this statement, summary judgment is inappropriate on Count III. Accordingly, the court shall deny the Motion with respect to the defense of opinion.

### 3. *Qualified privilege*

"Qualified privilege is an affirmative defense in a defamation action." *Jones v. University of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013).

> The law recognizes certain situations may arise in which a person, in order to protect his own interests or the interests of others, must make statements about another which are indeed [defamatory]. When this happens, the statement is said to be privileged, which simply means no liability attaches to its publication.

*Id.* (quoting *Barreca*, 683 N.W.2d at 116-17). The doctrine is based on public policy principles. *See id.* To demonstrate the defense of qualified privilege, a defendant must show:

> (1) the statement was made in good faith, (2) the defendant had an interest to uphold, (3) the scope of the statement was limited to the identified interest, and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only.

*Id.* (quoting *Theisen v. Covenant Med. Ct., Inc.*, 636 N.W.2d 74, 84 (Iowa 2001)). "[M]embers of subordinate legislative bodies, including city councils, are entitled to a

19

qualified privilege for statements made in the performance of their official duties 'upon any subject matter pertinent and relevant' to the occasion." *Barreca*, 683 N.W.2d at 118 (quoting *Cowman v. LaVine*, 234 N.W.2d 114, 124-25 (Iowa 1975)). However, qualified privilege does not apply "if the speaker acts with actual malice, or exceeds or abuses the privilege through, for example, excessive publication or through publication to persons other than those who have a legitimate interest in the subject of the statements." *Jones*, 836 N.W.2d at 149 (quoting *Theisen*, 636 N.W.2d at 84) (internal quotation marks omitted). To establish actual malice for the purpose of precluding the defense of qualified privilege, "a plaintiff must show the statement was made with knowing or reckless disregard for whether it was true or false." *Id.* It is normally the "court's responsibility to determine whether a defendant's statement is qualifiedly privileged, and a jury question as to whether the privilege was abused." *Id.*; *see also Barreca*, 683 N.W.2d at 118 (stating that it is the court's job to determine if the occasion of the statement is privileged, then the jury's job to determine "whether that privilege was abused").

As an initial matter, the court finds that Defendants' statements are entitled to qualified privilege. The statements were made in good faith in the course of city council business regarding a situation involving a city council resolution and a city employee. Defendants acted to uphold the City's financial interests and to ensure that city council records are properly maintained. The scope of the statement was limited to those interests. Additionally, the written statement was published in accordance with Iowa Code § 372.15. *See Barreca*, 683 N.W.2d at 118 (stating that city council members' statements are qualifiedly privileged, and subsequently considering the issue of whether the qualified privilege was abused).

Cerny-Deahl argues that there is a genuine issue of material fact with respect to whether Defendants' statements lost their qualified privilege. Although Defendants agree that the abuse of a qualified privilege is generally a jury question, they argue that the court

should find as a matter of law that the qualified privilege was not abused. *See* Brief in Support of the Motion at 16-19.

Cerny-Deahl presented evidence that Launderville authorized July 1, 2013 as the start date for Cerny-Deahl's salary change, despite his statements to the contrary. *See* Deposition of Sandra Cerny-Deahl, Plaintiff's App'x (docket no. 25-3) at 35-36. There is a dispute between the parties concerning whether Launderville told Cerny-Deahl that July 1, 2013 was the date for the salary change. Defendants argue that even if Launderville had authorized the salary change, Cerny-Deahl should have known that only the city council could make such a decision and, therefore, her actions would still have been improper. *See* Brief in Support of the Motion at 18-19. Under these facts, the court cannot say, as a matter of law, that Defendants did not abuse their qualified privilege  that they acted "without 'actual malice,' i.e. without a knowing or reckless disregard for the truth." *Barreca*, 683 N.W.2d at 123. Determining what evidence to believe with respect to whether Defendants acted with knowing or reckless disregard for the truth is a jury question. Viewing the evidence in the light most favorable to Cerny-Deahl, there is a question of material fact with regard to whether Defendants abused their qualified privilege. Therefore, summary judgment is inappropriate on Count III. Accordingly, the court shall deny the Motion with respect to the defense of qualified privilege.

### D. Punitive Damages

Defendants argue that the court should grant summary judgment with respect to Cerny-Deahl's claim for punitive damages because "the record contains no evidence from which a reasonable jury could make an award of punitive damages under either federal or state law." Brief in Support of the Motion at 21. Cerny-Deahl argues that the court should deny the Motion with respect to punitive damages because there is a genuine issue of material fact regarding whether "Launderville acted with a reckless disregard for the truth." Brief in Support of the Resistance at 15.

Under Iowa law, "[a]n officer or employee of a municipality is not liable for punitive damages as a result of acts in the performance of a duty, unless actual malice or willful, wanton and reckless misconduct is proven." Iowa Code § 670.12. "[A]ctual malice is characterized by such factors as personal spite, hatred, or ill will." *Kiesau*, 686 N.W.2d at 173 (quoting *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 396 (Iowa 2001)) (internal quotation marks omitted). Willful, wanton or reckless misconduct "occurs when an actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Id.* (quoting *Viotho v. Hardin Cnty.*, 509 N.W.2d 350, 356 (Iowa 1993)). "To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show that the defendant acted with no care and with disregard to the consequences of those acts. *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (quoting *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005)) (internal quotation marks omitted).

Defendants argue that Cerny-Deahl has offered no evidence to support a finding of punitive damages. However, Cerny-Deahl has offered an email sent to Launderville stating that the salary change at issue would begin on July 1, 2013, as was her understanding based on a prior conversation. Additionally, there is a signed statement from Colleen Damon, the deputy city clerk, regarding her recollection of Launderville telling Cerny-Deahl and Damon that the salary change would be effective on July 1, 2013. *See* Plaintiff's App'x at 65-66. Although a close call, the court finds that "a reasonable fact finder could find by a preponderance of clear, convincing, and satisfactory evidence [that] the conduct of [Launderville] from which the claim arose constituted willful and wanton disregard for the rights . . . of another." *Cawthorn*, 743 N.W.2d at 529 (quoting Iowa Code § 668A.1.1.a) (formatting and quotation marks omitted) (first alteration in

original).  Accordingly, the court shall deny the Motion with respect to punitive damages.

## VIII.  CONCLUSION

In light of the foregoing, Defendants' Motion for Summary Judgment (docket no. 22) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)     The Motion is **GRANTED** with respect to Cerny-Deahl's violation of due process based on a property interest claim in Count I.

(2)     The Motion is **GRANTED** with respect to Cerny-Deahl's violation of due process based on a liberty interest claim in Count II.

(3)     The Motion is **DENIED** with respect to Cerny-Deahl's defamation claim in Count III.

(4)     The Motion is **DENIED** with respect to Cerny-Deahl's claim for punitive damages.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA